UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AVERY DONINGER, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : NO. 3:07CV1129 (MRK) |
| | : |
| KARISSA NIEHOFF and | : |
| PAULA SCHWARTZ, | : |
| | : |
| Defendants. | : |

**RULING AND ORDER**

Both Ms. Doninger and Defendants have moved for reconsideration of this Court's decision dated January 15, 2009, *see* Memorandum of Decision [doc. # 93], in which the Court granted in part and denied in part Defendants' Motion for Summary Judgment [doc. # 73] and denied Plaintiff's Motion for Partial Summary Judgment [doc. # 74]. For the reasons that follow, the Court DENIES Plaintiff's Motion for Reconsideration [doc. # 95] and further DENIES Defendants' Motion for Reconsideration [doc. # 96].

**I.**

The standard for granting a motion for reconsideration is strict. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). Such a motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* A "motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." *Horsehead Res. Dev. Co., Inc. v. B. U.S. Envtl. Servs., Inc.*, 928 F. Supp. 287, 289 (S.D.N.Y. 1996) (citations and quotation marks omitted). Furthermore, a "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already

decided." *Shrader*, 70 F.3d at 257. "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478, at 790 (1981)).

## II.

The Court first considers Defendants' Motion for Reconsideration [doc. # 96]. Defendants move for reconsideration on three grounds, all related to the issue of qualified immunity. They argue that (1) the Court erred in concluding that the specific right at issue in Ms. Doninger's T-shirt claim was clearly established; (2) even if the right was clearly established, the Court erred in not concluding that Ms. Niehoff's actions were objectively reasonable; (3) Ms. Schwartz is entitled to qualified immunity on the T-shirt claim on the grounds that she was not personally involved in the alleged constitutional violation.

### A.

On the first ground, Defendants disagree with the Court's analysis that "this case is sufficiently similar to *Tinker* that the right was clearly established and, thus, Defendants' are not entitled to qualified immunity." Mem. of Decision [doc. # 93]. They argue that, contrary to the Court's conclusion and unlike in *Tinker*, there was evidence in the record of disruption and potential disruption because of the T-shirts. According to Defendants, the disruption at issue is "disruption of the integrity of the election process" because of the rumor that some students planned to write Avery's name into the election ballot, even though she had been disqualified. *See* Defs.' Mot. for Reconsideration [doc. # 96] at 7. They also cite the fact that several students yelled Ms. Doninger's

name during the election assembly, "requiring Principal Niehoff to admonish the students to be more respectful." Defs.' Reply to Mot. for Reconsideration [doc. # 100] at 2.

First of all, the Court notes that Defendants did not make this argument in their Motion for Summary Judgment. Instead, Defendants argued that Ms. Doninger's speech was not chilled, that she did not have standing to bring the claim, and that Defendants were permitted to institute viewpoint neutral restrictions at election assemblies. As explained above, a "motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." *Horsehead Res. Dev. Co., Inc.*, 928 F. Supp. at 289 (citations and quotation marks omitted).

Second of all, even if the Court were to consider this new argument, it would not change its decision that Defendants are not entitled to qualified immunity on the T-shirt claim. The Court does not believe that the danger of write-in votes is the type of disruption that the Supreme Court in *Tinker* intended to guard against. As it happens, students did write in Ms. Doninger's name on the election ballot and she received a plurality of the vote. Administrators certified the runner-up as the winner and there is no evidence in the record that this action caused any further disruption by the students. A student's passive, non-offensive speech cannot be considered disruptive solely because it causes other students to engage in non-disruptive and non-offensive speech. Voting for the candidate of one's choice is the paradigmatic exercise of freedom of speech, even if that candidate is disqualified from running. Defendants obviously were displeased that students chose to express themselves in this way, but that does not transform the acting of writing in Ms. Doninger's name into

a form of disruption.¹

Nor does the Court consider a few students calling out Ms. Doninger's name sufficient to constitute disruption within the meaning of *Tinker*. Under *Tinker*, the disruption must be "substantial." 393 U.S. 503, 513 (1969); *see also Doninger v. Niehoff*, 527 F.3d 41, 48 (2d Cir. 2008). A few students calling out Ms. Doninger's name and immediately ceasing upon Ms. Niehoff's admonition is not substantial. This is not a case in which a mob ensued or school administrators were unable to get the situation under control. A few shouts at a high school election assembly seems to the Court, and may seem to the jury as well, as entirely normal and not indicative of disruption above and beyond what would likely occur at any high school assembly. Furthermore, as the Court noted in its decision, the "Team Avery" T-shirts could not have caused the students to shout out her name because students were not allowed to wear the T-shirts into the auditorium.

Defendants are correct that disruption does not actually need to occur before they can take action to restrict student speech. Rather, the proper inquiry is whether "school officials might reasonably portend disruption from the student expression at issue." *Doninger*, 527 F.3d at 51. However, Defendants argue that the disruption that they reasonably portended was a "disruption of the integrity of the election process." Defs.' Mot. for Reconsideration [doc. # 96] at 7. Notably, Defendants do not argue that they reasonably believed that the election assembly would get out of

---

¹ In their section on objective reasonableness, Defendants also argue that the write-in votes were disruptive because they interfered with the "rights of the other students to be represented in student government by qualified leaders." Defs.' Mot. for Reconsideration [doc. # 96] at 11. ("'Disruption' under *Tinker* includes interference with the rights of other students." (citing *Hazelwood v. Khuhlmeier*, 484 U.S. 260, 266 (1988)). The problem with this argument is that the write-in votes did not interfere with the rights of other students – the second highest vote-getter was allowed to serve as class secretary and therefore the students were not deprived of qualified student leaders. Nor was there any danger that students would be deprived of qualified student leaders; Defendants remained in control of the election process from beginning to end.

control or that other disruption would occur. As explained above, the Court does not believe that the sort of disruption that Defendants claim they envisioned is the type of disruption that allows school administrators to restrict speech. Therefore, nothing in Defendants' Motion for Reconsideration causes the Court to reevaluate its decision that this case is sufficiently similar to *Tinker* that the right at issue was clearly established.

**B.**

Next, Defendants argue that as a matter of law, it was objectively reasonable for Ms. Niehoff to believe that she could place reasonable, viewpoint-neutral restrictions on student speech in a nonpublic forum. *See* Defs.' Mot. for Reconsideration [doc. # 96] at 8.[2] As the Court explained in its decision, "the Court has no doubt that a school could choose to place reasonable viewpoint-neutral restrictions on electioneering materials in school assemblies." Mem. of Decision [doc. # 93] at 20. However, the Court concluded that there was evidence in the record to suggest that the restriction was not viewpoint neutral and was specifically intended to restrict Ms. Doninger's speech. Defendants would like the Court to disregard this evidence and find as a matter of law that Ms. Niehoff's actions were objectively reasonable, relying on Ms. Niehoff's testimony that she intended to exclude all electioneering materials. However, whether Ms. Niehoff's actions were objectively reasonable depends on which version of the facts the jury believes. It is therefore a classic jury

---

[2] Defendants also make this argument in their section on whether the right was clearly established. However, the Court explicitly rejected this argument in its decision. Defendants present no new evidence overlooked by the Court, nor do they cite any cases that the Court did not itself cite in its decision. Therefore, the Court declines to address this argument in the context of their motion for reconsideration.

question and cannot be decided by the Court on a motion for summary judgment.[3]

Defendants point to a recent Supreme Court decision, *Pearson v. Callahan*, 2009 WL 128768 (2009), in which the Supreme Court reaffirmed that qualified immunity applies "regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* at * 6 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)). However, nothing in *Pearson* removes the requirement that the mistake be "reasonable." *Groh,* 540 U.S. at 566. Here, as the Court noted in its ruling, there are disputed issues of fact regarding that question that require a jury to hear the evidence and to resolve those disputes of fact.

## C.

Defendants also argue that the Court should have granted summary judgment to Ms. Schwartz on the T-shirt claim because Ms. Doninger has not shown that she was personally involved in the constitutional violation. Again, Defendants did not make this argument on summary judgment and, therefore, the Court declines to consider it now. Of course, it may be prudent for Ms. Doninger to drop her claim against Ms. Schwartz and instead focus on her stronger claim against Ms. Niehoff, but that is for Ms. Doninger to decide. If Defendants wished to advance this argument, they should have done so in their Motion for Summary Judgment. Ms. Schwartz is free to renew this claim in the form of a motion for judgment as a matter of law at trial.

---

[3] Defendants argue that it is undisputed that there was no other electioneering materials in the auditorium and, therefore, it is undisputed that the restriction was viewpoint neutral. Defendants' argument requires a jump of logic that the Court cannot make on summary judgment. The mere fact that there were no other electioneering materials in the auditorium does not necessarily mean that they were prohibited. It could also be the case that no other students attempted to bring electioneering materials into the auditorium, which would not affect whether the *policy* was discriminatory or viewpoint neutral.

### III.

The Court is loathe even to address Plaintiff's Motion for Reconsideration [doc. # 95] because of its complete lack of merit. In short, Ms. Doninger argues that the Court committed a "clear error" when it failed to distinguish between Ms. Doninger's individual and official capacity claims in its qualified immunity analysis, because officials sued in their official capacities are not entitled to qualified immunity. The Court agrees that there is a clear error here, but it is not the Court's. It is Ms. Doninger's. For her argument fails on any number of grounds.

First, a claim against Defendants in their official capacities is a claim against the School District. In order to bring a claim against a municipal entity, a plaintiff must show that the constitutional violation was the result of a municipal policy or custom. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978). Ms. Doninger's First and Second Amended Complaints are entirely devoid of any allegations that a municipal policy or custom caused the constitutional violation she allegedly suffered. Instead, Ms. Doninger vociferously argued that Ms. Niehoff and Ms. Schwartz treated her differently than any other student.

Ms. Doninger now argues that Ms. Niehoff and Ms. Schwartz were final policymakers and, therefore, she need not show a municipal policy or custom. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 1999). The problem with this argument is that nearly five months before the motions for summary judgment were filed, Plaintiff's counsel specifically stated that Plaintiff was *not* bringing a claim against the School District, other than her now-moot claim for injunctive relief. During David Miller's deposition on February 25, 2008, the following exchange ensued between Mr. Gerarde, Defendants' counsel, and Mr. Schoenhorn, Plaintiffs' counsel:

>   Mr. Gerarde: I represent the school district in this case.
>   Mr. Schoenhorn: You represent the school district as far as injunctive relief. *There is no claim other than in the injunctive action against the school district.*
>                             * * *
>   Mr. Schoenhorn: The school district is not a party to this action.
>   Mr. Gerarde: Yes, it is.
>   Mr. Schoenhorn: No, it's the principal and the superintendent are being sued and *there is a claim for injunctive relief in the official capacity and there is a claim for damages in their individual capacities*.

Defs.' Opp'n to Pl.'s Mot. for Reconsideration [doc. # 97] Ex. A (Transcript of David Miller's Deposition). Plaintiff's counsel now contends that he misspoke and that there was in fact a *Monell* claim against the School District. If that were the case, then Plaintiff's counsel had an obligation to correct his mistake and to give Defendants notice of the claims against them. Instead, counsel raised the claim that Defendants were final policymakers for the first time in her *reply brief* to her Motion for Reconsideration, depriving Defendants not only of a chance to address the argument but also depriving them of the opportunity to take discovery on the claim.

Second, the Court finds it significant that Ms. Doninger failed to mention her *Monell* claim against the School District even once in all of the briefing on the motions for summary judgment. And, of course, that briefing focused on the issue of qualified immunity. Nor did Ms. Doninger's counsel ever mention a *Monell* claim at oral argument, despite extended argument regarding qualified immunity. Therefore, even if Ms. Doninger had asserted a *Monell* claim in her complaint – and she did not – any such claim would have been deemed abandoned by her counsel's failure even to mention it in briefing or oral argument. Given Ms. Doninger's counsel's conduct, the Court is inclined to believe either that counsel intentionally hid the ball in the hope of sneaking past summary judgment unchallenged or that he never even thought of pressing a *Monell* claim against the School District until the Court issued its decision granting summary judgment on the blog entry claim

against Defendants in their personal capacities. In either case, the Court will not allow Ms. Doninger to inject this new claim at this late stage of the action.

Third, the Court rejects as completely unfounded Ms. Doninger's argument that Defendants were on notice she had brought claims against Defendants in their official capacities for damages because when she filed her Second Amended Complaint, which dropped her claims for injunctive relief, she continued to state that Defendants were being sued in their personal and official capacities. Ms. Doninger contends that if Defendants were confused as to which claims remained pending, the onus was on them to seek clarification. However, as Defendants point out, the Second Amended Complaint [doc. # 87] was filed on September 4, 2008, several months *after* Defendants filed their Motion for Summary Judgment and a mere day before they filed their reply brief. Even if the Second Amended Complaint could be considered notice – and the Court does not believe it can – that notice came far too late to be effective.

Moreover, the Court granted Ms. Doninger permission to file the Second Amended Complaint for the limited purpose of substituting Avery Doninger as a party in place of her mother. *See* Order [doc. # 85] ("The Motion is granted to the extent that Plaintiff seeks to substitute Avery Doninger as the party plaintiff for Lauren Doninger, P.P.A., since Avery Doninger is now 18 years of age."). Defendants were therefore entitled to believe that the only change between the First and Second Amended Complaints was the substitution of Avery Doninger for her mother. Indeed, that is precisely what Ms. Doninger's counsel represented to the Court and to opposing counsel. *See* Pl.'s Mot. for Joinder of Avery Doninger [doc. # 90]. And Defendants, very reasonably, depended on the representation of Ms. Doninger's counsel. The argument that Defendants should have combed through the Second Amended Complaint looking for hidden hints of a *Monell* claim despite counsel's

representation is disingenuous, at best.

Fourth and finally, even if the Court were to assume (contrary to the facts) that Ms. Doninger had properly asserted a *Monell* claim against the School District, the Court would still deny her Motion for Reconsideration. The Court stated in its decision that "it does not believe that there is any reason to change its position that Ms. Doninger's First Amendment rights were not violated when she was told that she could not run for class secretary because of an offensive blog entry that was clearly designed to come on to campus and influence fellow students." Mem. of Decision [doc. # 93] at 14.[4] Of course, the Court also concluded, in the alternative, that Defendants were entitled to qualified immunity because any such right was certainly not clearly established. But if no constitutional violation occurred, as the Court held, then Ms. Doninger's claims against the Defendants in both their individual and official capacities must fail.

Ms. Doninger focuses on the fact that the Court concluded that the "dispute of fact prevents the Court from granting Defendants summary judgment on the basis of the Second Circuit's decision alone." Mem. of Decision [doc. # 93] at 12. However, as the Court explained in its decision, that conclusion did not end the inquiry. The Court went on to conclude that, even if Defendants' actions were not permissible under *Tinker*, they were still constitutional under *Fraser*. Inexplicably, Ms. Doninger completely ignores this second part of the Court's analysis in her Motion for Reconsideration.

For all of these reasons, the Court will not allow Ms. Doninger to pursue a *Monell* claim

---

[4] Ms. Doninger is correct that the Court made this statement in the section of the decision on qualified immunity. However, the Court made it in the context of the first step of the *Saucier* analysis, which requires the Court to decide whether a constitutional violation occurred and which applies to both individual and official capacity claims.

against the School District. Nor will Ms. Doninger be allowed to pursue her T-shirt claim against Defendants in their official capacities.

## IV.

Accordingly, Plaintiff's Motion for Reconsideration [doc. # 95] is DENIED and Defendants' Motion for Reconsideration [doc. # 96] is also DENIED.

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: March 19, 2009.**